IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 04-cv-01961-LTB-CBS

SANFORD LEE HERTZ,

Plaintiff and Counterclaim Defendant,

v.

LUZENAC AMERICA, INC., a Colorado corporation, and
THE LUZENAC GROUP, a French corporation,

Defendants.

AND

LUZENAC AMERICA, INC., a Colorado corporation,

Counterclaim Plaintiff,
_____

ORDER
_____

Supposing that the Court failed to appreciate the gravamen of two of its arguments, Luzenac rehearses them in a motion to reconsider my summary judgment order of April 17, 2006. It also moves for amendment of certain portions of the order.

Though the motion to reconsider does not fit any of the purposes of Rule 60(b), I understand and appreciate the desire of Luzenac's counsel to assure their client that the Court considered the arguments that Luzenac intended to make and not merely those that the Court understood it to make. In a further effort to ameliorate the discussion of this fact-intensive case (for a detailed discussion of the facts and issues I refer to my April 17 order), I will attempt to

recast my answers, as Luzenac has attempted to recast its arguments.

Luzenac first asserts that it disclosed the entirety of its manufacturing process in no single public document. It notes that I have cited no discrete, public repository of all of the elements of the process in the aggregate. That is both true and irrelevant. The rule of *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125 (10th Cir. 2003) and similar cases is that one claiming a trade secret must take *affirmative* steps to guard the secrecy; merely refraining from publishing the purported secret is not enough. *See Id.* at 1131-1132; *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 848 (10th Cir. 1993); *Colorado Supply Co., Inc. v. Stewart*, 797 P.2d 1303, 1306 (Colo. Ct. App. 1990).

(An aside: that Luzenac did not affirmatively publish all of the elements of its process together does not necessarily imply that the elements, each and all of which Luzenac did disclose to members of the public individually and in various combinations, are not assembled somewhere other than this Court's April 17 order. Indeed, Dr. McCarthy supposed in deposition that just such a compilation exists somewhere; he conjectured that former employees took it with them upon their departure. That testimony alone would have been sufficient ground for entry of summary judgment against Luzenac. In any event, contrary to the conclusory assertion of Luzenac's expert witness, reiterated in Luzenac's response brief as a statement of fact, the evidence in the record does not further elucidate the question.)

Put another way, Luzenac's obligations under *Harvey Barnett* were two. First, Luzenac was obligated to refrain from releasing its manufacturing process to the public – a duty of omission. Second, it was obligated to take affirmative steps to keep the process secret – a duty of commission. As to the individual elements of its process and various combinations of those

elements, it violated the former duty. As to the aggregate of the elements constituting a distinct trade secret, if any, it violated the latter duty. The former dereliction abetted the latter; once Luzenac had disclosed each and all of the elements of the process, it would have been extraordinarily difficult to keep the sundry recipients of the information from communicating with each other. In any event, Luzenac made no apparent attempt to do so.

Put yet another way, Luzenac allowed, and in some instances affirmatively promoted, the release of each and all of the elements of its manufacturing process to the public domain. It has identified no non-obvious way in which those publicly-available elements can be combined to constitute a distinct trade secret, other than the manner identified publicly, i.e. mixing in a batch process. Indeed, the manufacturing (mixing) process itself was revealed to Littleford Day, among others. However, even if Luzenac could identify any distinct secret constituted of the combination of the elements (in the aggregate), the record demonstrates beyond factual dispute that Luzenac took only ceremonial measures – i.e. instructing its employees, including its salesmen, to keep "everything" about the product confidential – to maintain the secrecy of any such aggregated trade secret.

Luzenac next recites several of its actions, which it previously characterized as affirmative measures to guard the secrecy of its process in the aggregate. For the sake of clarity, I briefly revisit two. First, though Van Horn Metz was under an obligation to maintain the secrecy of Luzenac's proprietary information, and specifically required its own producer to keep the 604AV process confidential, Luzenac took no action to require secrecy of the many other parties who had access to the process – its silane supplier, its distributors, its temporary employees, Littleford Day, customers, and potential customers, among others.

Second, Luzenac rehearses its argument that Messrs. Hertz and Lighthart understood the 604AV process to be confidential. However, the testimony of those men, read in context and with the definition of operative terms *as those terms were used in the depositions*, reveals that they would not have disclosed the process to a competitor *while they were working for Luzenac*. They also testified that any information they appropriated was *not* confidential. It is impossible to read that negative as an affirmative, which Luzenac continues to attempt. Whatever duties Messrs. Hertz and Lighthart felt obliged to honor – loyalty, good faith – no reasonable reading of the depositions commends Luzenac's assertion, now stated thrice, that they understood themselves bound to secrecy.

Luzenac also has filed a motion to amend the April 17 order, arguing that I overstated the discrepancy between the record and various representations in Luzenac's pleadings and briefs. This argument does not warrant further comment.

Luzenac correctly points out that nothing in the record suggests that Barry Nelson, who was questioned in deposition concerning Luzenac's corporate relations and structure, was designated under Rule 30(b)(6) to discourse on that topic. I drew that erroneous inference from footnote number 228 in the brief in support of Mr. Hertz's summary judgment motion. Though Luzenac framed its corporate structure as a key issue on summary judgment, I was unable to locate evidence on the question in the voluminous record, which I scoured. Nevertheless, the footnote did not inexorably lead to the conclusion I drew from it.

In any event, my analysis does not change. The evidence is that a person purporting to speak on Luzenac's behalf communicated to IMI Fabi Luzenac's assertion that Mr. Hertz had stolen Luzenac's trade secrets. Luzenac produced no evidence that the sender of that missive is

4

an agent of a distinct corporate entity, as it now asserts. If Luzenac desired to clarify the matter on summary judgment it could have done so. Not that clarification of the factual issue would have resolved the legal question: Luzenac may be liable whether the sender was Luzenac's actual or apparent agent. Any material, factual dispute may be resolved at the trial of Mr. Hertz's defamation claim.

Accordingly, it is ORDERED that:

1) Luzenac's motion to amend the judgment [270] is DENIED; and

2) Luzenac's motion for reconsideration [277] is DENIED.

Dated: June __27__, 2006, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge