IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  04-cv-01961-LTB-CBS

SANFORD LEE HERTZ,

       Plaintiff and Counterclaim Defendant,

v.

LUZENAC AMERICA, INC., a Delaware Corporation,

       Defendant and Counterclaim Plaintiff.

_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment filed by Defendant and

Counterclaim Plaintiff, Luzenac America, Inc. ("Luzenac"), seeking dismissal of the Title VII

retaliation claim asserted against it by Plaintiff and Counterclaim Defendant, Sanford Lee Hertz

("Hertz").  **[Doc # 448]**  Oral arguments would not materially assist me in the determination of

this motion.  After consideration of the parties' briefs and arguments, and for the reasons stated,

I  DENY the motion seeking dismissal of Hertz's retaliation claim, but I STRIKE Hertz's

allegation related to the filing of counterclaims by Luzenac in this case.

## I. BACKGROUND

Hertz was employed by Luzenac from August 1994 until his termination in January 1998.

Luzenac mines, processes and sells talc products, and Hertz was the Technical Manager in

Luzenac's paint group.   Shortly after his termination, Hertz sued Luzenac under Title VII for

religious discrimination and retaliation.  Following a trial, the jury returned a verdict in favor of

Hertz on his retaliation claim by finding that he was terminated for objecting to Luzenac's perceived discrimination based on his religion.  *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014 (10th Cir. 2004).

After the trial, Hertz entered into a consulting agreement with IMI Fabi, LLC ("IMI Fabi"), to help it develop, manufacture and market a vinyl silane-coated talc product to compete with Luzenac's product known as Mistron 604AV.  After becoming aware of the agreement, Luzenac sent Hertz a cease-and-desist letter in August of 2003, through counsel, demanding that Hertz stop misappropriating Luzenac's trade secrets.  In response to the letter, Hertz filed this lawsuit seeking declaratory relief that he had not misappropriated trade secrets.  Hertz also asserted additional claims against Luzenac of:  unlawful retaliation under Title VII; defamation; tortious interference with contract; and tortious interference with prospective business advantage. Luzenac filed counterclaims based on  misappropriation of trade secrets, interference with prospective business advantage, and theft.

 On April 17, 2006, on cross-motions for summary judgment, I dismissed Hertz's claims for tortious interference with contractual relations and interference with prospective business relations, which was upheld on appeal.  [Doc # 259]; *Hertz v. Luzenac Group,* 576 F.3d 1103, 1107 (10th Cir. 2009).   I did not dismiss Hertz's retaliation and defamation claims, and that ruling was not appealed.

On summary judgment I also dismissed Luzenac's claims for misappropriation of trade secrets, misappropriation of customer information, conspiracy, and breach of contract.  The Tenth Circuit held, on appeal, that issues of material fact related to the determination of these claims existed and, as such, the Court reversed and remanded for trial to a jury. *Id.* at 1120.

2

Finally, the Tenth Circuit also reviewed and upheld my decision to deny Hertz's motion to amend his complaint to add a claim for abuse of process on the grounds that amendment of the complaint would be futile because Hertz failed to allege improper use of the legal process by Luzenac. *Id.* at 1117.

Therefore, on remand Hertz's remaining claims against Luzenac are for Title VII retaliation and defamation. In addition, Luzenac's counterclaims that continue against Hertz are interference with prospective business advantage, misappropriation of trade secrets, conversion, civil theft, conspiracy, and breach of contract.

## II. ANALYSIS

Luzenac now moves for summary judgment in its favor on Hertz's Title VII retaliation claim. Specifically, Hertz alleges that he engaged in protected activity when he sued Luzenac for discrimination following his termination, and that while that prior case was pending, Luzenac improperly retaliated when they "falsely accused him of stealing its trade secrets" and by filing "baseless counterclaims against him" in this case.

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record in the light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant

3

must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc*., 971 F.2d 492, 494 (10th Cir. 1992).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

Hertz's Title VII retaliation claim proceeds under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  As such, he bears the initial burden of proving by indirect evidence that:  (1) he engaged in protected opposition to discrimination; (2) a reasonable person would have found Luzenac's subsequent action to be materially adverse; and (3) a causal connection exists between Hertz's protected activity and Luzenac's subsequent action.  *Semsroth v. City of Wichita,* 555 F.3d 1182, 1184 (10th Cir. 2009)(*citing McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006)).  If he is successful, Luzenac must then articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the adverse action.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997).  Finally, if Luzenac meets this burden, Hertz must present evidence raising a genuine issue that the reason offered by Luzenac is a mere pretext.  *Id*.

Luzenac argues that Hertz cannot meet his burden of proving his *prima facie* case because he cannot establish, as a matter of law, that Luzenac took a materially adverse action against him (step two of a *prima facie* retaliation case).  Luzenac's actions would be deemed "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  This standard focuses on the

retaliatory action, not the underlying discrimination the employee had opposed.  *Id.* at 69-70.

Each case is "judged from the perspective of a reasonable person in the plaintiff's position,

considering all the circumstances."   *Id.* at 71 (quotations omitted); *see also Semsroth v. City of*

*Wichita, supra*, 555 F.3d at 1184.

Hertz alleges that Luzenac took several adverse actions against him while his initial

March 1999 lawsuit related to his discriminatory termination  – as the underlying protected

activity – was pending.  On September 21, 2010,  I determined that Hertz's specific assertion

that Luzenac retaliated against him by filing a lawsuit against IMI Fabi in a pending lawsuit in

West Virginia, was not an adverse action that could support his Title VII retaliation claim.  As a

result, I struck that allegation as a basis for his retaliation claim.  [Doc # 453]   As a result,

Hertz's remaining alleged adverse actions are that:

(1) Claude Stenneler sent an e-mail to IMI Fabi, dated July 31, 2003, indicating that

Hertz – as a former employee of Luzenac – was using stolen data to improperly inform/advise

the market;

(2) Luzenac's counsel sent a cease-and-desist letter, on August 5, 2003, to Hertz's

counsel, and copied to IMI Fabi, alleging that Hertz was illegally using Luzenac's proprietary

information to compete against it; and

(3) Luzenac asserted baseless counterclaims against Hertz in response to this lawsuit.

## A.  Stenneler E-mail

On July 31, 2003, while Hertz's initial discrimination lawsuit was still pending against

Luzenac, Claude Stenneler sent an e-mail to IMI Fabi indicating that Hertz was using stolen,

protected data to inform/advise the market, and that they would file suit "against any

manufacturer/distributor using his advices."

Luzenac argues that the undisputed evidence is that this action cannot be attributed to it, because at the time the email was sent Stenneler was not an employee of Luzenac America, Inc. – the named defendant in this case. Rather, as evidenced by the face of the email, Stenneler was an employee of "Luzenac Group" – as indicated by the initials "LG CIT," as opposed Luzenac America, Inc.'s email initials of "LNA" – and the email address of Claude.Stenneler @group.luzenac.com. Luzenac argues that Hertz has no evidence that Stenneler sent the e-mail on behalf of Luzenac America, Inc. Thus, Luzenac asserts that Hertz cannot, as a matter of law, establish that the sending of the e-mail was a materially adverse action taken against him by Luzenac America, Inc.

In response, Hertz argues that – as was the case in my first ruling on summary judgment – there no evidence in the record specifically concerning the corporate structure of Luzenac, or the relationships among its affiliates, and that Luzenac's designated witness on the issue could not knowledgeably testify in his deposition as to these topics. I agree. Even if Stenneler was not an employee of Luzenac, America, Inc., the face of the email could also be read to infer that it was sent on behalf of Luzenac America, and the evidence Luzenac cites in support of its claim that it was not sent or authorized by it is unconvincing at best. When viewing the evidence in favor of Hertz, as I must do on summary judgment, I again find that "[f]actual disputes resulting from Luzenac's confusion concerning its corporate relationships can be resolved at trial." [Doc # 259 ]

In addition, I reject Luzenac's argument to the extent that it asserts that the email was not materially adverse. The email, which was sent before this case was filed, could have dissuaded

6

a reasonable employee from "supporting a charge of discrimination." *Burlington Northern &*

*Santa Fe Ry. v. White, supra,* 548 U.S. at 60.   As a result, I conclude that Stenneler's email –

which was sent during the pendency of Hertz's initial discrimination case and before the filing of

this case – could be found by a reasonable jury to be a materially adverse action.

## B.  Luzenac's Counterclaims

I next address Luzenac's argument that its act in asserting counterclaims against Hertz, in

this case, cannot not be deemed an adverse action.   Luzenac argues that the act of filing

counterclaims is not an adverse action that can be the basis of Hertz's retaliation claim because

the Tenth Circuit ruled – in the context of upholding my determination that Hertz failed to allege

improper use of the legal process  – that Luzenac was entitled to protect its trade secrets by filing

compulsory counterclaims in this case.   Hertz argues, in response, that the Tenth Circuit's ruling

is limited to its determination in the abuse of process claim, and that the act of filing "baseless"

counterclaims in this lawsuit can constitute a materially adverse action.

I agree that the Tenth Circuit's ruling was limited to its determination that Luzenac's

filing of counterclaims could not support an abuse of process claim.   As I indicated in my ruling

dated September 21, 2010:   "While the Tenth Circuit ruling is clear that Luzenac's

counterclaims asserted against Hertz are an appropriate legal means to protect its perceived trade

secrets, I disagree that the . . . ruling extends to the assumption that Luzenac's claims against

IMI Fabi are not baseless and, as such, cannot form the basis for Hertz's claim that the filing of

the lawsuit against IMI Fabi was an improper act of retaliation." [Doc # 453]   As a result, I

concluded that the Tenth Circuit ruling that filing the counterclaims was a proper use of the legal

process "does not necessarily lead to the conclusion that such efforts asserted in the lawsuit

against IMI Fabi are not a retaliatory act, under Title VII . . .". [Doc # 453]

However, I further ruled that the act of filing suit against IMI Fabi could not support a claim of retaliation because a reasonable employee would not have found it materially adverse. Specifically, I reasoned that because Hertz's current claim of retaliation against Luzenac in this case is based on his position as an improper competitor – as opposed to as an employee – the act of filing the lawsuit against IMI Fabi could not have dissuaded a reasonable employee from continuing to support a pending claim of discrimination. "Rather, such action would have served to sway the reasonable person to continue to assert his or her pending claims," citing *Somoza v. University of Denver,* 513 F.3d 1206, 1214 (10th Cir. 2008).  [Doc # 453]

That reasoning is equally applicable here to Luzenac's act of asserting counterclaims against Hertz in this case.  The filing of the counterclaims clearly would not have served to dissuade Hertz – or any other reasonable person in his position – from continuing to support or pursue his discrimination claim.  *See Burlington Northern & Santa Fe Ry. v. White, supra,* 548 U.S. at 60.  I agree with Hertz that the act of filing a counterclaim could, under different circumstances, constitute an adverse action in support of a retaliation claim.  *See Robinson v. Dean Foods Co.*, 2009 WL 2382764, 5 (D.Colo., July 30, 2009)(unpublished).  But, in this case Hertz is not in the posture of an employee or even a former employee, but rather is a plaintiff in a case that is fundamentally about whether or not he misappropriated  trade secrets.  Although Hertz argues that his filing this lawsuit was from a defensive posture, I note that the counterclaims raised by Luzenac are compulsory and would have been lost if not raised.  See Fed. R. Civ. P. 13(a) (defining compulsory counterclaims).  I conclude that the filing of counterclaims in this case cannot not be deemed an adverse action in support of Hertz's claim of

8

retaliation under Title VII, under the circumstances of this case.

## C.  Cease-and-Desist Letter

On August 5, 2003, Luzenac's counsel sent to Hertz's counsel a cease-and-desist letter – on which IMI Fabi was copied – which alleges that Hertz had used or disclosed Luzenac's confidential information or trade secrets.  Luzenac claims that this letter cannot constitute an adverse action, as a matter of law, in that it was a required precursor to its misappropriation claims.   I disagree.

The cease-and-desist letter – which, notably, was copied to IMI Fabi – was sent to Hertz while his initial discrimination case was still pending, but prior to the filing of this litigation. While the Tenth Circuit has ruled that it was error to dismiss Luzenac's misappropriation claims on summary judgment –  in that there were issues of material fact on this claim that required jury determination –  this ruling does not extend to the conclusion that the act of sending a copy of the cease-and-desist letter to IMI Fabi could not constitute a materially adverse action.  As I initially determined on summary judgment in this case, a "jury can reasonably conclude that the letter [which accused Hertz of misappropriating trade secrets and was sent to IMI Fabi prior to the filing of this lawsuit] constituted a retaliatory, adverse action."  [Doc # 259]

### III. CONCLUSION

Accordingly, I DENY Luzenac's Motion for Summary Judgment [**Doc # 448**] seeking dismissal of the Title VII retaliation claim asserted against it by Hertz.  However, in so doing, I STRIKE Hertz's allegation in support of his retaliation claim that Luzenac retaliated against him by asserting baseless counterclaims against Hertz in response to this lawsuit.

Dated: November ___29___, 2010, in Denver, Colorado.

BY THE COURT:


_____s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE