IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 04-cv-01961-LTB-CBS

SANFORD LEE HERTZ,

      Plaintiff and Counterclaim Defendant,

v.

LUZENAC AMERICA, INC., a Delaware Corporation,

      Defendant and Counterclaim Plaintiff.

_____

ORDER
_____

      This matter is before me on a Motion to Strike filed by Defendant and Counterclaim Plaintiff, Luzenac America, Inc. ("Luzenac"), seeking to strike the testimony of Bruce Berglund, as an expert and fact witness designated by Plaintiff and Counterclaim Defendant, Sanford Lee Hertz ("Hertz"). [**Doc # 465**] After consideration of the parties' briefs and exhibits, as well as the argument, evidence and testimony presented to me on April 12, 2011, I DENY the motion for the following reasons.

### I. Background

      Hertz was employed by Luzenac from August 1994 until his termination in January 1998. Luzenac mines, processes and sells industrial talc products, and Hertz was the Technical Manager in Luzenac's paint group. Following his termination with Luzenac, Hertz entered into a consulting agreement with IMI Fabi, LLC ("IMI Fabi"), to help it develop, manufacture and market a vinyl silane-coated talc product to compete with Luzenac's product. The Luzenac product is known as "Mistron 604AV," and IMI Fabi's competing product is called "Genera."

After becoming aware of the agreement, Luzenac sent Hertz a cease-and-desist letter, through counsel, demanding that Hertz stop misappropriating Luzenac's trade secrets in August of 2003. In response to the letter, Hertz filed this lawsuit against Luzenac seeking declaratory relief that he had not misappropriated trade secrets. In addition, Hertz has asserted claims against Luzenac for Title VII retaliation and for defamation. Luzenac's counterclaims against Hertz are for intentional interference with prospective business advantage, misappropriation of trade secrets, conversion, civil theft, conspiracy, and breach of contract.

## II. Mr. Berglund's ProfferedTestimony

In the Second Amended Pretrial Order, Hertz indicates that Bruce Berglund will be called to offer "opinion testimony regarding Luzenac's asserted trade secrets and industry related knowledge regarding related products" consistent with his reports and deposition testimony. In addition, Hertz proffers that Dr. Berglund "may testify about the public availability of the information Luzenac accused Hertz of stealing, including techniques and processes that are typically used in the industry to apply chemicals to minerals, and Hertz's knowledge of such techniques and processes prior to his employment at Luzenac." [Doc # 460]

In his expert report, dated October 2, 2005, Berglund makes the following conclusions:

1)  There is a wealth of knowledge, published and unpublished, regarding silicone and silane mineral treatments going back for decades. The use of vinyl triethoxysilane (VTEO) to treat talc was known in the 1970's. Treating talc with 0.5-1.0% silane including VTEO has been common industry knowledge. The chemistry of vinyl silane treated talc described in Luzenac documents is common industry knowledge and not proprietary.

2)  Lee Hertz was familiar with silicone (and silane) chemistry when he worked at Wacker as a silicone chemist for the coatings industry in the early 1990's. Lee Hertz knew about treating silicates, clay and talc with silicones (including silane) when he worked at Wacker in the early 1990's and prior to his employment at Luzenac.

3)       The Alpine process as described in the November 11, 2002 document by Ed McCarthy is not unique and, in fact, has some likely issues that would be expected to lead to non-uniform talc treatment with agglomerates, incomplete reaction and lower treatment levels than expected depending on the temperature and humidity in the manufacturing site (due to VTEO vaporizing instead of reacting with the talc). As such, Luzenac's purported trade secret process is well known in the industry. Each of the individual characteristics and components of the Luzenac process as well as the process as a whole is in the public domain. To the extent Luzenac witnesses testified that it was developed over years of experimentation this effort was due to inadequate research and was not reasonable or necessary. Given the amount of available information it would take minimal time or expense for someone experienced in the industry to duplicate and even improve on Luzenac's process.

4)       The IMI Fabi process used to make Genera products is distinctly and substantially different from the Luzenac Alpine process. The talc is different. The silane is introduced to the process differently. The mixer used is different. The residence or reaction time is different. The products are different. It is apparent that Lee Hertz used his prior knowledge about silicone treatments from Wacker to design process changes that produced a more uniform, consistent product. It is clear to me that Lee Hertz developed the IMI Fabi process based on his skill, knowledge and experience from Wacker and reading readily available, standard industry information on silicone (silane) filler treatment.

5)       The differences between the Alpine and IMI Fabi processes are significant leading to differing qualities of VTEO treated talc as was observed in customer performance evaluations. The IMI Fabi process was derived from Hertz' general knowledge, expertise, and experience in the industry and that he did not rely on any specific process used by Luzenac.

6)       It is easy for coatings industry suppliers to identify coatings companies to approach and target with products. Lee Hertz, who was knowledgeable about these sources of information, knew coatings manufacturers, what kinds of coatings they make, and what kinds of raw materials they use at the time he worked for Wacker. Lee Hertz had the general knowledge, expertise and experience in the industry to know where to sell silane treated talc before joining Luzenac.

7)       Customer information and contacts go with the person – Coating customers have commonly stated that "people buy from people." Lee Hertz had well established coatings industry relationships prior to joining Luzenac when he worked at Wacker.

8)       It is common for competitors to try to duplicate products made by other companies – Customers often ask for other suppliers to make something similar to competitive offerings (an offset). In this case the Genera product is a functional offset to the Luzenac product, differing in composition and performance.

9) Existing suppliers of a product run the risk of losing their business whenever they change, discontinue, or try to replace products at an account. When a manufacturer needs to begin technical work to evaluate and qualify a new product they generally open the door to competitive offerings as well when they perform their evaluations. When Luzenac decided to change Mistron 604AV manufacturing sites or discontinue Mistron 604AV and have VHM 604AV replace it Luzenac ran the common risk of losing the business to competitive technologies and products.

10) Based on my knowledge and experience in the industry, of Lee Hertz's expertise prior to joining Luzenac, and the significant differences between the two manufacturing processes it is my opinion that the IMI Fabi process was derived from Hertz's general knowledge, expertise, and experience in the industry and that he did not rely on any specific process used by Luzenac.

In this motion, Luzenac asks that I strike Bruce Berglund as both an expert and a fact witness. Hertz opposes this request. On April 12, 2011, the parties argued the motion and Luzenac presented evidence in the form of testimony by its expert, Dr. Ray Hauser.

### III. Fact Testimony

As an initial matter, I first address Luzenac's argument that I should strike Mr. Berglund as a fact witness for lack of foundation. Mr. Berglund's fact-based testimony, as proffered, relates to Hertz's knowledge and expertise gained *prior* to his employment at Luzenac; specifically, the extent of Hertz's pre-Luzenac knowledge of industry techniques and/or processes; his general knowledge of the industry; and his "well established coatings industry relationships" in order for him to know where to sell silane treated talc. Dr. Berglund's proffered testimony is based on their past relationship as co-workers with another company ("Wacker") from 1993 to 1994. Luzenac maintains that Dr. Berglund only worked with Hertz for one year, from 1993 to 1994, as technicians or chemists who worked in the same laboratory, but on different projects. Mr. Berglund testified in his deposition that they were "good work colleagues" and that he would give advice to Hertz regarding his projects. However, he did not

4

supervise Hertz or work jointly with him. Luzenac asserts that this relationship is insufficient to establish personal knowledge of the matter under Fed. R. Evid. 602.

Rule 602 provides that "[a] witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 "does not require that the witness' knowledge be positive or rise to the level of absolute certainty . . . [e]vidence is inadmissible only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." *U.S. v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)(*quoting M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 681 F.2d 930, 932 (4th Cir. 1982)). It is permissible for a witness to provide both lay and expert testimony in a single case. *See U.S. v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002)("[w]itnesses need not testify as experts simply because they are experts"); *see also* Fed.R.Evid.701, 2000 Advisory Committee's Note (Rule 701 "does not distinguish between expert and lay *witnesses,* but rather between expert and lay *testimony"*)(emphasis in original).

To the extent that Mr. Berglund has sufficient personal knowledge to render factual testimony about what he was aware that Hertz knew prior to his employment with Luzenac, the parties agreed at the hearing on this motion that this determination is not subject to a pre-trial ruling. As such, I will deny Luzenac's pre-trial request that such testimony is inadmissible as without foundation under Rule 602. To the extent that Luzenac wishes to challenge Berglund's personal knowledge of his proffered factual testimony, such challenge is for determination at trial. *See generally Koch v. Koch Industries, Inc.*, 2 F.Supp.2d 1385, 1388 (D.Kan. 1998)("a court is almost always better situated during the actual trial to assess the value and utility of

evidence").

### IV. Expert Testimony

I next address Luzenac's argument that Dr. Berglund should not be allowed to offer his opinions as an expert witness in this matter. Berglund's expert testimony relates to his general knowledge and opinions about the silicone chemical industry, and his opinion about what constitutes common industry knowledge in this case. Berglund also opines as to specific issues in this case, such as that the process used by IMI Fabi to manufacture Genera is "distinctly and substantially different" than the Luzenac process for making Mistron 604AV.

The admission of expert testimony is governed by Fed. R. Evid. 702, 703, 401 and 403. Rule 702 sets forth the standard for admission of expert testimony, and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Specifically, Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Fed. R. Evid. 702 by a preponderance of the evidence. *Daubert v. Merrell Dow, supra,* 509 U.S. 579 at 592 n. 10; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The court's "gatekeeping" role favors admissibility of expert testimony when it is reliable and relevant, but any issue of credibility or weight of the expert's testimony

6

belongs to the trier of fact. *Frederick v. Swift Transp. Co., Inc.,* 591 F.Supp.2d 1156, 1158 -1159 (D. Kan. 2008).

In assessing a Rule 702 challenge, I must first determine whether the expert is qualified to render the proffered opinion. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). If I determine that the expert is sufficiently qualified, I next assess whether the opinion itself is reliable. *Id.*; *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1220 (D .Colo. 2008)("in addition to the witness having appropriate qualifications, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable").

Whether an expert's testimony is reliable requires an assessment of "the reasoning and methodology underlying the expert's opinion." *Daubert v. Merrell Dow, supra*, 509 U.S. at 592-93. The reliability factors, as first set forth in *Daubert v. Merrell Dow,* include the following: (1) whether the theory or technique at issue has been subjected to testing, (2) whether the theory or technique has been subjected to publication and peer review, (3) whether the theory or technique has a known or potential rate of error, and (4) whether the theory or technique has achieved general acceptance in the particular technical or scientific community. *Id.* at 593-94. The test of reliability is "flexible" and the *Daubert* factors "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire v. Carmichael, supra*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").

The reliability determination focuses on the process or means by which the witness derived the opinion – this is referred to as an assessment of the methodology or application of principles. Fed. R. Evid. 702 sets out three specific requirements: 1) a showing that the method

or principle used by the witness is reliable; 2) a showing that the witness used sufficient facts and data as required by the method or principle; and 3) a showing that the witness properly applied the method or principle to the collected facts and data. *See U.S. v. Crabbe, supra*, 556 F.Supp.2d at 1221-22; *see also* Fed. R. Evid. 703 (providing that "in order for the opinion or inference to be admitted," the underlying facts or data relied upon must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject").

Finally, I must determine whether the proffered expert testimony is relevant in that it will assist the trier of fact. In so doing, I consider non-exclusive factors such as: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *U.S. v. Rodriguez- Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)(citations omitted); *see also* Fed. R. Evid. 401 (relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The question of relevance is essentially "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow, supra*, 509 U.S. at 593; *see also General Elec. Co. v. Joiner,* 522 U.S. 136, 151-52, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The consideration of relevant evidence is one of "fit"or "the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.* 391 F.3d 1114, 1121 (10th Cir. 2004). Even if deemed relevant, however, expert evidence "may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" under Fed. R. Evid. 403.  *See e.g. C.A. Associates v. Dow Chemical Co.,* 918 F.2d 1485, 1489 (10th Cir. 1990).

**A.  Process is Different**

Luzenac's primary argument is that Dr. Berglund should not be able to opine that the process used by IMI Fabi to manufacture Genera is "distinctly and substantially different" than the Luzenac process for making Mistron 604AV.  Luzenac does not challenge Dr. Berglund's credentials or qualifications related to this opinion.  Nor does it contend that the testimony should be excluded for any reason under Fed. R. Evid. 403.  Rather, Luzenac asserts that he should not be allowed to provide expert testimony because his opinions are unreliable and/or are irrelevant.

Luzenac first maintains  that Berglund's opinion that the manufacturing processes are different should be stricken as unreliable.  Luzenac argues that Berglund's methodology regarding the differences in the process is unreliable because it is supported only by inaccurate factual assumptions and/or unsupported speculation.  In so doing, Luzenac notes that Berglund lacks personal knowledge of the primary difference in the process.  Specifically, Berglund has never witnessed the equipment or method by which silane is introduced to the talc in IMI Fabi's process.  In addition, it argues that the other differences relied upon by Berglund are not material or undermined by his own testimony.  As such, his conclusions regarding the differences are not supported by sufficient facts to meet the minimal test of reliability under Rule 702.  Luzenac also asserts that Berglund's opinion is not relevant – in that his testimony is not sufficiently tied to the facts of the case and would be of no assistance to the jury – because the five differences

relied upon do not pertain to or are not part of the alleged misappropriated trade secret.

In response, Hertz argues that Luzenac's only argument is that Berglund's opinion about the differences in the manufacturing processes is that he has not personally observed the IMI Fabi process. Hertz asserts that first-hand observations are not required to form an expert opinion. Moreover, Hertz maintains that the application of the silane to the talc is "but one small aspect of a broader analysis" underlying his opinion of the substantial differences between the processes, and even if Berglund is wrong about that process, such error goes to credibility. Finally, Hertz argues that it will produce evidence that the differences relied upon by Berglund are important aspects of IMI Fabi's trade secret in its entire manufacturing process.

It is well established that Hertz bears the burden of establishing the admissibility of Dr. Berglund's expert testimony pursuant to Fed. R. Evid. 702. *U.S. v. Nacchio,* 555 F.3d 1234, 1237 (10th Cir. 2009). As such, it would have benefitted Hertz to have Dr. Berglund testify at the hearing on this motion. However, in exercising my function as a gatekeeper of expert testimony, I conclude that Dr. Berglund's proffered opinion testimony related to the alleged differences in the Luzenac and IMI Fabi process is not excluded by Fed. R. Evid. 702.

First, as noted, Luzenac does not challenge Dr. Berglund's qualifications to render his opinion on this issue. Rather, Luzenac argues that the testimony is unreliable by challenging its methodology on the basis that Berglund's factual assumptions are not based on personal knowledge and are patently erroneous. However, Berglund is not required to have first-hand knowledge of the process in order to render an opinion and, in addition, to the extent he relies upon inaccurate facts related to the process, such reliance is a matter of credibility susceptible to cross-examination at trial. I disagree that these alleged errors rise to the level of rendering the

methodology so speculative as failing to meet the minimal test of admissibility, or negated the showing that Berglund utilized sufficient facts and data under Rule 702 and *Daubert v. Merrell Dow, supra*. Finally, I find that the proffered testimony is relevant in that there is clearly a logical relationship between it and the material issue in question here – specifically, whether Hertz misappropriated Luzenac's trade secrets in creating the IMI Fabi process – in order to aide the jury. The issue of the differences and similarities of the IMI Fabi and Luzenac processes is a quintessential "battle of the experts" in which cross-examination will be the testing ground for the jury. "Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow, supra,* 509 U.S. at 595.

**B.  IMI Fabi Process is a Trade Secret**

Luzenac next argues that Berglund should not be able to testify at trial that it is his opinion that the manufacturing process used by IMI Fabi is a protected trade secret. Luzenac again argues that Berglund's opinion is based on inaccurate knowledge of that process. As such, Luzenac maintains that such opinion is unreliable. In its briefing, Luzenac refers to the fact that Berglund admits that he has no personal knowledge of IMI Fabi's critical process – the application of a extremely fine droplet size of silane. Luzenac also asserts that Berglund has no knowledge about IMI Fabi's actions or inactions in keeping its process secret. As such, Luzenac argues that Berglund's opinion that IMI Fabi's process is a trade secret is not reliable.

Hertz acknowledges in its briefing that Berglund "mentioned in passing" that the IMI Fabi process is a trade secret, but concedes that whether IMI Fabi's process is or is not a trade secret is not at issue in this case. However, Hertz argues that the fact that the IMI Fabi process is

11

unique or not "known in the industry" is relevant because it tends to show that Hertz did not rely on information from Luzenac when developing the IMI Fabi process.

Whether IMI Fabi's manufacturing process, or parts thereof, is unique or not publicly known in the industry constitutes expert testimony subject to Fed. R. Evid. 702 analysis. Luzenac does not challenge Dr. Berglund's qualifications to testify as to this issue. To the extent that Luzenac contests reliability, I find that Dr. Berglund's opinions on what information and processes are known in the industry – as applied to this case – is a reliable methodology. And, like his opinion how the manufacturing processes are different, Luzenac may discredit his opinion by cross-examination related to its position that his factual assumptions related to the IMI Fabi are erroneous. Again, I disagree with Luzenac to the extent it is arguing the Berglund's reliance on alleged incorrect facts renders his methodology to be so speculative that his opinions are unreliable. Finally, I conclude that the opinion testimony at issue is clearly relevant, in that it would assist the jury to determine the issue of whether Hertz misappropriated Luzenac's trade secrets related to the manufacture of Mistron 604AV when he set up the process to manufacture Genera at IMI Fabi.

## C. Misappropriated Customer Information

Luzenac also asserts that Dr. Berglund should not be able to testify that Hertz did not misappropriate customer information because Hertz knew who to contact based on his knowledge of the industry before being hired by Luzenac. At the hearing, Luzenac argues that Berglund is not qualified to testify to this issue because he has no expertise in the area of customer list. Luzenac also argued that his opinion is not reliable because it is based on incorrect factual assumptions.

In its response and at the hearing, Hertz agreed that Berglund may not testify as to whether or not Hertz misappropriated customer lists from Luzenac. Rather, Hertz contends that Berglund's proffered testimony relates to what customer information – such as purchasing volumes, price, etc. – constitutes general industry knowledge, and that Hertz had relationships with these customers prior to joining Luzenac.

I have determined, as discussed above, that whether Berglund may testify as a fact witness regarding his awareness of Hertz's knowledge of the industry prior to his employment with Luzenac is an issue of foundation for trial. I further conclude that Berglund's general knowledge of the availability of customer information in the industry is admissible as generalized expert testimony. *See* 2000 Advisory Committee Notes to Fed. R. Evid. 702 (recognizing that it is "important in some cases for an expert to educate the fact finder about general principles, without ever attempting to apply these principles to the specific facts of the case"). Generalized expert testimony requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the fact finder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case. *Id.* at ¶ 9.

I conclude that Berglund's testimony related to general knowledge regarding the customer base in the industry is admissible under this standard. However, as agreed to by the parties, Mr. Berglund will not be allowed to testify as to his opinion on whether Hertz did or did not misappropriate customer information from Luzenac.

**D. Public Availability**

Finally, Luzenac asserts that Berglund should not be permitted to opine that portions of the process Hertz is accused of misappropriating from Luzenac is publically available

information or to testify as to Hertz's general knowledge of that publically available industry knowledge.

In its briefing, Luzenac's sole challenge to this testimony is that it is not "fact" testimony – as designated or described as in the Second Amended Pretrial order – but rather constitutes expert testimony. At the hearing, Luzenac argues that Berglund is not qualified to testify as to Hertz's general knowledge of the industry because he is not qualified to testify as to what Hertz knows, and any such testimony would not be reliable because Berglund's knowledge of the industry is again based on inaccurate factual information – specifically, the "primary issue" of how saline is applied to talc in the manufacturing process.   Thus, Luzenac argues that Berglund should not be allowed to testify as to Hertz's industry knowledge.

To the extent that Luzenac is challenging Dr. Berglund's testimony related to his knowledge of the depth of Hertz's industry knowledge prior to his employment at Luzenac, such testimony is factual in nature and, as I have ruled, is subject to any foundational challenge under Fed. R. Evid. 602 at trial.

In contrast, whether the processes at issue are or are not publically available constitutes expert testimony in the form of specialized knowledge as set forth in Fed. R. Evid. 702.  And, as such, it is subject to the rigors of admissibility for expert opinion.  Luzenac argument that Berglund is not qualified to testify as an expert as to the public availability of such information, and that his testimony is again not reliable.  However, as discussed above, I have determined that Berglund's opinion regarding whether IMI Fabi's manufacturing process, or parts thereof, is publicly known in the industry is admissible opinion evidence under Fed. R. Evid. 702.

ACCORDINGLY, for the reasons stated, I DENY Luzenac's Motion to Strike Plaintiff's Expert Bruce Berglund. [**Doc # 465**]

Dated: April   19  , 2011 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE