IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  04-cv-01961-LTB-CBS

SANFORD LEE HERTZ,

    Plaintiff and Counterclaim Defendant,

v.

LUZENAC AMERICA, INC., a Delaware Corporation,

    Defendant and Counterclaim Plaintiff.
_____

ORDER
_____

Before me are the following pre-trial motions filed by Defendant, Luzenac America, Inc.: (1)  Motion *In Limine* to Exclude Evidence of a July 31, 2003 E-mail from Claude Stenneler to Corrado Fabi  [**Doc # 506**]; (2) Motion *In Limine* to Exclude Evidence of the Premature Birth and Death of Plaintiff's Twin Infants [**Doc # 507**]; and (3) Motion *In Limine* to Exclude Evidence Of and Reference To Hertz's First Lawsuit [**Doc #509**].  Pursuant to my order, Plaintiff Stanford Lee Hertz has filed briefs in response to these motions. [Docs # 524, 525 & 526 ] The motions are adequately briefed and oral argument will not assist me in ruling on them.

**I. Background**

Mr. Hertz successfully sued Luzenac in 1999 for retaliation after he was terminated from his position as the Technical Manager in Luzenac's paint group.  After the conclusion of that trial, Hertz entered into a consulting agreement with non-party IMI Fabi to help it manufacture a talc product to compete with Luzenac. After becoming aware of the Hertz/IMI Fabi agreement in

August of 2003, Luzenac sent Hertz a cease-and-desist letter, through his counsel, demanding that Hertz stop misappropriating and disclosing Luzenac's trade secrets.

In response to the letter, Hertz filed this lawsuit against Luzenac seeking declaratory relief that he had not misappropriated trade secrets. Hertz also subsequently asserted claims of: unlawful retaliation under Title VII; defamation; tortious interference with contract; and tortious interference with prospective business advantage. On April 17, 2006, I dismissed Hertz's claims on summary judgment for interference with contractual relations and interference with prospective business relations, which was subsequently affirmed on appeal to the Tenth Circuit. *Hertz v. Luzenac Group,* 576 F.3d 1103 (10th Cir. 2009). As a result, Hertz's remaining claims against Luzenac are for: (1) Declaratory Relief (that he had not misappropriated trade secrets); (2) Title VII Retaliation (as limited by my September 21, 2010 order in which I struck Hertz's allegation that "Luzenac retaliated against him by suing IMI Fabi during the pendency of this lawsuit" [Doc # 453], and my November 29, 2010 order striking Hertz's allegation "that Luzenac retaliated against him by asserting baseless counterclaims against Hertz in response to this lawsuit" [Doc # 480]); and (3) Defamation.

Luzenac asserts the following counterclaims against Hertz: (1) Misappropriation of Trade Secrets in violation of Colo. Rev. Stat. §§ 7-4-101, *et seq.* C.R.S.; (2) Conversion; (3) Civil Theft in violation of Colo. Rev. Stat. §§ 18-4-401 and -405; (4) Conspiracy; (5) Breach of Contract with respect to Hertz's alleged breach of his confidentiality obligation; and (6) Intentional Interference with Prospective Business Advantage.

### II. Motion *In Limine* to Exclude July 31, 2003 E-mail from Claude Stenneler

Luzenac first seeks a pre-trial order prohibiting Hertz from presenting evidence at trial of

an email exchange between Claude Stenneler and Corrado Fabi, dated July 31, 2003, on the basis that it is irrelevant, under Fed. R. Evid. 401 & 402, and constitutes inadmissible hearsay, under Fed. R. Evid. 802.

The email at issue was sent by Claude Stenneler – an employee at Luzenac Sierra, S.A. de C.V., a European Company – to Corrado Fabi – the CEO of IMI Fabi. It states as follows:

> **From:** STENNELER, Claude (LG CIT) [mailto: Claude.STENNELER@group.luzenac.com]
> **Sent:** Thursday, July 31, 2003 4:36 PM
> **To:** corrado.fabi@imifabi.com
> **Subject:** Lee Herz' advising services
>
> Dear Corrado,
>
> We are aware that M.Lee Herz a former employee of Luzenac America is using "stolen protected data" from Luzenac to inform/advise the market.
> Due to the detrimental effect of his actions, we have set up a case against him and are ready to do the same to any manufacturer/distributor using his advices.
> Could you please be kind enough to inform your staff about the risks involved in case they would be contacted by M. Herz.
>
> Best personal regards
> Claude

Hertz contends that Stenneler's assertion in this email that Hertz was using "stolen protected data" constitutes grounds for both his retaliation and defamation claims.

Luzenac argues that the email is irrelevant as it was sent from an employee at Luzenac Sierra, S.A. de C.V. – a non-party – and Hertz cannot demonstrate that Stenneler sent the e-mail as an employee or agent of Luzenac America – the named defendant in this case. Thus, Stenneler's assertion in the email that Hertz was using "stolen protected data" cannot be attributed to Luzenac America in support of Hertz's retaliation and defamation claims and, as such, it must be excluded as irrelevant under Rule 401 (relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the

3

determination of the action more probable or less probable than it would be without the evidence") and Rule 402 ("[e]vidence which is not relevant its not admissible.")

Luzenac also argues the email constitutes inadmissible hearsay under Fed. R. Evid. 802, which prohibits evidence of "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Luzenac further argues that the provisions of Fed. R. Evid. 801(d)(2) – that it would be admissible if "(C) a statement by a person authorized by the party to make a statement concerning the subject . . . [or] (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" – are not applicable because Hertz cannot prove the existence of an agency relationship. Specifically, Luzenac argues that Hertz cannot show that at the time Stenneler sent the e-mail: 1) he was an employee of Luzenac America authorized to send it; or 2) he was acting in the course and scope of an agency relationship with Luzenac America; or 3) that he was acting as Luzenac America's agent. Thus, it argues that the e-mail is not an admission of a party opponent deeming it admissible under Rule 801(d)(2)(C) or (D).

In response, Hertz argues that the email does not constitute hearsay in that it is not being offered to prove the proof of the matter asserted therein. *See* Fed. R. Evid. 801(c)(defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). In addition, Hertz maintains that it will prove an agency relationship between Stenneler and Luzenac America at trial. Specifically, Hertz argues that regardless of whatever formal legal relationship existed between Luzenac America and the European Luzenac affiliates, "strong circumstantial evidence

4

will be presented at trial that Stenneler was acting on behalf of Luzenac America when he sent the email defaming Hertz." This proffered evidence is as follows. A talc producer reported to a Luzenac America employee that Hertz was making inaccurate representations regarding a Luzenac talc product (the 604AV). This information was ultimately discussed by several Luzenac America officers in July 2003, and then the Stenneler email was sent, on July 31, 2003, "apparently . . . to confirm that Hertz was actually working for IMI Fabi." After getting a response to the email, Stenneler indicated to Mr. Fabi that he would contact Luzenac America and then did so by emailing Luzenac America's president. Hertz argues that these facts constitute strong circumstantial evidence of an implied agreement between Luzenac American and Stenneler that he would act on behalf of Luzenac America in communicating with Mr. Fabi. And, moreover, that even if Luzenac America did not initially authorize Stenneler to send the email, Luzenac knew that he had done so and ratified it by its subsequent conduct. *See Colorado Jury Instructions 4th* – Civil 7:11; 7:13, and 7:16 (defining the agency relationship).

     While the email is not offered to prove the truth of the matter asserted, to be relevant it must be attributable to Luzenac America. So, if these facts are proven at trial, they are sufficient to take the issue of agency to the jury. As such, I CONDITIONALLY DENY Luzenac's Motion *In Limine* to Exclude Evidence of a July 31, 2003 E-mail [Doc # 506], and rule that the issue of agency will be dealt with as the evidence is presented at trial pursuant to objection under Fed. R. Evid. 103.

### III.  Motion *In Limine* to Exclude Evidence of the Premature Birth & Death of Plaintiff's Twin Infants

When outlining the damages he seeks, Hertz has asserted that after Luzenac sent the cease-and-desist letter, Hertz was unable to continuing working with IMI Fabi and was forced to move to take a new job.  This disruption occurred late in his wife's first pregnancy and, subsequently, Hertz's wife gave birth to twins prematurely, and the twins died.  Thus, because of Luzenac's actions in sending the letter,  Hertz asserts that was forced to deal with this tragedy without the support of his close Colorado friends and family, causing him emotional distress.  Luzenac seeks a pre-trial order prohibiting Hertz from presenting this evidence on the basis that it is irrelevant under Fed. R. Evid. 401 & 402 or, alternatively, its prejudicial effect greatly outweighs its probative value under Fed. R. Evid. 403.

Although Hertz will be entitled to his compensatory damages if he prevails on his retaliation claim pursuant to 42 U.S.C. § 1981a(b)(3), Luzenac argues that Hertz cannot prove that his damages related to the death of his twins was proximately caused by Luzenac's actions as such damages could have not been foreseen and are not relevant.  Luzenac notes that Hertz's counsel admits that there is no evidence that Luzenac caused the premature birth and death of his twins.  Furthermore, Luzenac asserts that this evidence should be excluded under Rule 403, which provides for the exclusion of evidence when "its probative value is substantially outweighed by the danger of unfair prejudice."  It argues that courts have routinely excluded evidence, such as the evidence at issue here, where its introduction would inappropriately appeal to the sympathy of the jury.  Luzenac maintains that even though there is no evidence of causation, a jury will understand that Hertz believes Luzenac is responsible for the deaths, and "[t]he strong emotional response to such an implication makes it more likely that the jury will find for Hertz on liability"

and "lead to a greatly increased award of damages." It further asserts that the probative value of such evidence is "essentially nil" because Hertz admits that he cannot tie the deaths to Luzenac's actions and, thus, the Rule 403 balancing test weighs heavily in favor of excluding the evidence.

Hertz argues, in response, that he does not intend to argue or imply that Luzenac was responsible for causing the deaths. Rather, Luzenac is responsible for the fact Hertz had to move away from his long-term home in Denver, to an unfamiliar city, and leaving his emotional "support system." Dealing with a tragedy of this magnitude was "even worse" when alone in a strange place without his community and relationships. This constitutes part of the emotional distress that Hertz suffered because of Luzenac's retaliation and defamation. Hertz argues that it was foreseeable that: Luzenac's actions would destroy the IMI Fabi business relationship; that Hertz would have to find other employment; that he might need to move away from his home in order to find that employment; and that this might cause him emotional distress.

While emotional distress from a move might be deemed foreseeable, the distress incurred from dealing with a tragedy such as the premature loss of Hertz's infants – which he agrees was not in any way caused by Luzenac's actions – is not foreseeable. I disagree with Hertz that "no prejudice will result from mentioning" his loss at trial. Rather, I conclude that Hertz should be prohibited from presenting evidence of the premature death of his infants on the basis that it is irrelevant based on foreseeability, under Rules 401 and 402, and that its prejudicial effect greatly outweighs its probative value under Rule 403. Therefore, I GRANT Luzenac's Motion *In Limine* to Exclude Evidence of the Premature Birth and Death of Plaintiff's Twin Infants [Doc # 507].

## V. Motion *In Limine* to Exclude Evidence of Hertz's First Lawsuit

Luzenac also seeks a pre-trial ruling excluding evidence of the previous lawsuit (*Hertz v. Luzenac America*, Case No. 99-N-417) filed by Hertz in 1999 – in which he was awarded judgment on the jury's verdict – on the basis that: 1) it is not relevant under Fed. R. Evid. 401 & 402; 2) it should be excluded under Fed. R. Evid. 403 as its prejudicial effect greatly outweighs its probative value; and 3) it constitutes improper bad acts/character evidence pursuant to Fed. R. Evid. 404. Alternatively, if the evidence is deemed admissible, Luzenac asks that the evidence of the first trial be limited to only the filing thereof – not the nature of the claim alleged or the outcome.

To establish claim of Title VII retaliation, Hertz must prove that: (1) he engaged in protected opposition to discrimination; (2) a reasonable person would have found Luzenac's subsequent action to be materially adverse; and (3) a causal connection exists between Hertz's protected activity and Luzenac's subsequent action. *Semsroth v. City of Wichita,* 555 F.3d 1182, 1184 (10th Cir. 2009)(*citing McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006)). In this motion Luzenac argues that evidence of Hertz's first lawsuit is irrelevant because Hertz cannot prove that Luzenac subsequently took any action that a reasonable *employee* would have found to be materially adverse (element 2), or that there is a causal connection between the first lawsuit and the alleged adverse actions (either the July 2003 cease-and-desist letter or the e-mail sent by Claude Stenneler) in support of his claim for retaliation (element 3).

First, to the extent that Luzenac argues that Hertz cannot offer any evidence that the letter or the e-mail "were sent to him as an employee – instead, they were sent to him as a former employee . . . and, more significantly, as an improper competitor," this argument does not relate

to the admissibility of the prior lawsuit. Rather, it related to whether the letter and email constitute adverse actions under the second element of Hertz's retaliation claim. I have previously rejected this argument based on the ruling in *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996), in which the Tenth Circuit upheld a Title VII retaliation award for a *former employee*, holding that the adverse action need not be integrally connected with the employment relationship when such action "can have an adverse impact on future employment opportunities and therefore can be an adverse employment action." [Doc # 259]      As to the evidence of the prior lawsuit, Luzenac maintains that it is not relevant in that Hertz cannot show that there was a causal connection between the first lawsuit and the alleged adverse actions as required by the third element of a retaliation claim.

     First, the prior lawsuit constitutes the protected activity Hertz must prove pursuant to the first element of his claim; namely that at the time of the alleged retaliation, Hertz was engaged in protected opposition to discrimination. Thus, the evidence is clearly relevant to prove that element. Moreover, Hertz argues that he will present sufficient evidence of causation between his first lawsuit (as a protected activity) and Luzenac's alleged adverse actions in retaliation therefor (in improperly accusing him of stealing trade secrets). Evidence related to Hertz's prior lawsuit is relevant to the subsequent actions by various Luzenac employees who felt the award was unfair, and were then key decision-makers in accusing Hertz of stealing Luzenac's trade secrets. I agree with Hertz that his proffered evidence related to the roles played by various Luzenac employees – during and after the first lawsuit and then in their actions related to the allegations of trade secret misappropriation – are sufficiently causally connected to make the first lawsuit relevant to the subsequent retaliation alleged. Thus, evidence of the first lawsuit is clearly relevant in this

case as it constitutes the protected activity, as well as evidence of motivation for the alleged retaliation here.

Luzenac further argues that even if the evidence of the first lawsuit is relevant, it should be excluded under Fed. R. Evid. 403 because there is great danger of unfair prejudice – in that it will prejudice or mislead the jury, and confuse the issues – and the probative value is minimal – in that the casual connection between the first trial and the alleged adverse actions is marginal. Luzenac asserts that evidence of the first trial would "result in a trial within a trial" here because if Hertz put on evidence that he was successful in one retaliation claim, Luzenac would be compelled to put on evidence regarding a separate discrimination claim that he lost.  In addition, Luzenac maintains that evidence of the first lawsuit should be excluded on the grounds that it constitutes improper character evidence that is "not admissible for the purpose of proving action in conformity therewith on a particular occasion" under Rule 404.  Luzenac asserts that evidence of the prior lawsuit will improperly show Luzenac's "alleged propensity to retaliate against" Hertz.

Finally, Luzenac requests that if I rule the evidence of the first trial is admissible, I should exclude evidence of the nature of the claims asserted or the outcome of the suit.  Luzenac argues that Hertz is claiming that the adverse actions (specifically the cease-and desist letter and the Stenneler e-mail) were done in retaliation for his bringing the first lawsuit and, as a result, the fact that the prior lawsuit was *filed* by him should be the only evidence presented to the jury.  This limitation would allow Hertz to present evidence of the protected activity, but then would mitigate against the potential for undue prejudice, confusion and misleading the jury – pursuant to Rule 403 – and the prohibition on other bad acts evidence to prove the character of Luzenac or its

employees in order to show action in conformity therewith – pursuant to Rule 404(b).

I conclude that Hertz may present evidence that he filed a previous lawsuit for wrongful termination against Luzenac in 1999, and that the jury returned a verdict in his favor. This evidence is relevant to prove the underlying protected activity, as well as the motivation to retaliate against Hertz as alleged in this case. The evidence meets the balancing test of Rule 403 in that its probative value clearly outweighs the danger of any possible unfair prejudice and mitigates against the specter of a trail within a trial. And, to the extent that it could be deemed to be prior bact acts evidence under Rule 404(b), it is clearly also relevant and admissible to show motive and intent. Therefore, I DENY Luzenac's Motion *In Limine* to Exclude Evidence of and Reference To Hertz's First Lawsuit as set forth above. [Doc #509]

## VI. Conclusion

ACCORDINGLY, for the reasons stated above, I rule as follows:

1) I CONDITIONALLY DENY the Motion *In Limine* to Exclude Evidence of a July 31, 2003 E-mail from Claude Stenneler to Corrado Fabi [**Doc # 506**];

(2) I GRANT the Motion *In Limine* to Exclude Evidence of the Premature Birth and Death of Plaintiff's Twin Infants [**Doc # 507**]; and

(3) I DENY the Motion *In Limine* to Exclude Evidence Of and Reference To Hertz's First Lawsuit [**Doc #509**].

Dated: October    12   , 2011, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE